## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

BERLAGE-BERNSTEIN BUILDERS, INC. v. LESLIE K. LEAR, JR. AND PATRICIA F. LEAR.

January 15, 1973.

Record No. 7995.

Present, Snead, C.J., Carrico, Harrison, Cochran, Harman and Poff, JJ.

*Richard E. Dixon (Kelly, Louk, Lawson, Swinburne & Dixon,* on brief), for plaintiff in error.

*Richard W. Boone (Carr, Bonner, O'Connell, Kaplan, Thompson & Diuguid,* on brief), for defendants in error.

No argument permitted for defendant in error.

POFF, J., delivered the opinion of the court.

Berlage-Bernstein Builders, Inc., developers of McLean Hunt subdivision in Fairfax County, brought a motion for judgment against Leslie K. Lear and Patricia F. Lear, his wife, for damages resulting from the wrongful filing of a *lis pendens* in an earlier suit for specific performance of a sales contract, and the Lears counterclaimed.

In a letter opinion incorporated in the final order entered on September 23, 1971 the trial court found that Berlage had sustained damages; that the damages had been fully mitigated; that the issues

raised by the counterclaim had been adjudicated in the earlier suit; and that judgment should be entered for the Lears on the motion for judgment and against the Lears on the counterclaim.

Assigning error to the trial court's finding that damages had been fully mitigated, Berlage gave notice of appeal and we granted a writ of error. No cross error was assigned.

On August 20, 1968 Berlage and the Lears entered into two contracts. Under the first, the Lears bought Lot 18, Section 1, McLean Hunt, and later occupied a residence Berlage constructed there.

Under the second contract, Berlage agreed to construct a second residence on Lot 38, Section 2, and the Lears agreed to purchase it when completed for $58,200.00. The second contract was made subject to the condition that the Lears sell their first residence by July 1, 1969.

The Lears failed to do so, and Berlage declared the second contract defaulted and returned the Lears' down payment.

On September 18, 1969 the Lears, alleging that they had negotiated a contract for sale of their first residence on June 30, 1969, sued Berlage for specific performance and filed a *lis pendens* against Lot 38. The trial court denied specific performance on the grounds that the Lears had refused, after proper notification by Berlage, to apply for a loan to finance the purchase of Lot 38.

On August 6, 1969, prior to the filing of the *lis pendens*, Berlage had entered into a contract for the sale of Lot 38 to one Fletcher for $63,250.00. When Fletcher learned of the *lis pendens*, he declined to settle on the contract.

On May 14, 1970 Berlage sold Lot 38 to one Ford for $62,940.00.

The damages itemized in the letter opinion included, *inter alia*, $3,558.15 for interest on the construction loan, taxes and utility bills paid by Berlage on Lot 38 after the loss of the Fletcher sale and prior to the Ford sale.[1] However, the trial court ruled that Berlage had "mitigated its damages by the sale to Ford in an amount in excess of the damages" and entered judgment for the Lears.

Although it is unclear from the letter opinion, it would appear that the trial court applied a damage formula which added damages in the full amount of the purchase price of the Lear contract to the itemized damages and subtracted the total from the larger Ford sale price, resulting in no net damage to Berlage.

---

[1] In addition, the trial court found damages of $310.00 for "Loss of Profit Fletcher Sale".

Such a damage formula makes two assumptions, both wrong. It assumes that Berlage's suit sought damages for the Lears' breach of their contract to purchase Lot 38; but Berlage's suit was grounded in tort for damages springing from the wrongful filing of a *lis pendens*. It assumes that Berlage is not entitled to the appreciation in value which accrued to Lot 38 after the date of the Lears' contract; but the judgment against the Lears in their specific performance suit confirmed rightful title in Berlage where it remained until the Ford sale.

When a seller loses his sale on account of the wrongful conduct of a stranger, he is entitled to the fruits of his bargain and consequential expenses incurred. See *Orebaugh* v. *Antonious,* 190 Va. 829, 58 S.E. 2d 873 (1950); *Zedd* v. *Jenkins,* 194 Va. 704, 74 S.E. 2d 791 (1953).

The proper damage formula looks to the damages Berlage suffered from the wrongful filing of the *lis pendens.* Berlage lost the Fletcher sale. Consummated, it would have yielded Berlage a profit of $310.00 in excess of the profit realized from the Ford sale. On account of the loss of the Fletcher sale, Berlage was obliged to pay additional bills awaiting eventual sale in the sum of $3,558.15. Berlage's total damages were $3,868.15.

Those damages were undiminished by the Ford sale. Had the Ford sale been delayed longer, damages for the intervening bills would have been higher. Had the Ford sale yielded less, the damages suffered in profit loss would have been greater. In making the Ford sale so soon for a price so close to the Fletcher contract price, Berlage did all it could to mitigate damages resulting from loss of the Fletcher sale.

The judgment on the counterclaim is affirmed. The judgment on the motion for judgment is reversed. Final judgment is entered for Berlage-Bernstein Builders, Inc., in the sum of $3,868.15.

*Reversed in part;*
*affirmed in part;*
*and final judgment.*